UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

SELENA MIRABAL,

CASE NO._____-CIV-

Plaintiff,

v.

AT&T MOBILITY SERVICES LLC,

Defendant.

_____/

## COMPLAINT

Plaintiff, SELENA MIRABAL (the "Plaintiff" or "Mirabal") files this Complaint against AT&T Mobility Services, LLC ("Defendant") and states as follows:

### JURISDICTION AND VENUE

1. The Plaintiff files this action against the Defendant because AT&T violated the American with Disabilities Act, 42 U.S.C. § 12101, et. seq., Title VII of the Civil Rights Act of 1964, as amended by the 1978 Pregnancy Discrimination Act, 42 U.S.C. §§ 2000eet seq. ("Title VII"), the Family and Medical Leave Act, 29 U.S.C. §§ 2611et seq. and Florida Civil Rights Act, Fla. Stat. § 760.01, et. seq. Thus, this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

2. Plaintiff resides in Broward County, Florida.

3. The Defendant is a company conducting business in the state of Florida with a principal place of business located in Tamarac, Florida.

4. The actions giving rise to this action occurred in Broward County, Florida.

5. This venue is proper pursuant to 28 U.S.C. § 1391(b) and (c).

## GENERAL ALLEGATIONS

6. In Florida, the Defendant employs more than 15 employees.

7. The Plaintiff worked as a Customer Service Representative Working from Home. The Plaintiff was considered a virtual call center employee and her job responsibilities included responding to inbound customer inquiries on products and services offered by the Defendant.

8. According to the Defendant's policies, an employee accumulates points whenever the employee has an unexcused absence. After a certain number of points, the employee can be terminated. Excused absences include those involving medical emergencies or approved maternity or short-term disability leave. In such situation, the employee must provide the medical records showing his or her condition.

9. In 2020, the Plaintiff became pregnant. During the pregnancy, she was diagnosed with Preeclampsia, which is considered a high-risk pregnancy. This condition substantially limits one or more of her major life activities (i.e. walking). The Plaintiff informed the Defendant that she was pregnant and at some point would take maternity leave. During all times relevant to this complaint, the Plaintiff performed her duties satisfactorily and had no issues with attendance. Other employees who were not pregnant were treated differently than the Plaintiff.

10. On January 25, 2021, Mirabal had a medical situation related to her pregnancy. She informed her supervisor. She attempted to take the day off, but the Defendant's system did not

allow her to take the day off. As a result, the system only excused the Plaintiff for two hours. The Plaintiff accumulated points even though her absence was due to her pregnancy and her supervisor was aware of the situation.

11. On or about February 1, 2021, the Plaintiff had an emergency situation due to her pregnancy and was forced to go to the emergency room. Similarly, on February 2, 2021, the Plaintiff had to go to the emergency room again due to her pregnancy related issues. On both days, the Plaintiff attempted to take the day off due to her medical condition but the electronic system that was used to do that did not allow her to do so. When she returned to work, the Plaintiff provided the medical records/discharge records from the hospital to her manager. Her manager informed the Plaintiff that those records were sufficient to excuse her absences.

12. The Plaintiff believed that the days she had missed had been excused given that she provided her medical/discharge records to the Defendant.

13. The Plaintiff contacted the Defendant repeatedly in order to confirm that the issues related to the absences of described above had been resolved but no one discussed the issue with her. Instead, various people told her that if she provided the hospital records from the emergency visit, the issue would be resolved.

14. On March 17, 2021, the Defendant denied her request for accommodation and excuse the absences described above. The Plaintiff contacted the Defendant to find out why the request had been denied but no one explained why the absences were not excused and failed to indicate what other records she needed to submit (other than the medical records of her emergency room visit).

15. Due to conditions related to her high-risk pregnancy, the Plaintiff applied for Short-Term Disability benefits (so she could have paid leave). She submitted all the necessary records to show her condition.

16. On or about February 23, 2021, the Plaintiff began an absence under the Short-Term Disability program. The leave was approved through May 5, 2021.

17. Even though her STD had been approved, the Defendant reversed course and denied her benefits in April of 2021 for period of February 23, 2021 through March 24 2021. Even though the Plaintiff continued to suffer from complications related to her pregnancy and she provided the medical records showing the same to the Defendant, the Defendant refused to allow her time off to deal with those issues. As a result, her absences were deemed unexcused further accumulating negative points during the time she was on maternity leave. The Plaintiff repeatedly contacted the Defendant to find out why the benefits were denied but no one ever got back to her with an explanation or to ask for any additional information from the Plaintiff.

18. In April of 2021, the Plaintiff informed the Defendant that she was cleared to return to work on June 1, 2021. The Defendant knew that she had been absent due to complications related to her pregnancy and the Plaintiff had provided all the documentation that they required. Nevertheless, the Defendant treated her absences as unexcused absences, accumulating negative points. The Defendant, however, did not mention this to the Plaintiff at that time.

19. Throughout the entire time, the Plaintiff contacted various individuals from HR and management to find out why the Defendant continued to treat her absences as unexcused and why the Defendant had not removed the negative points from her record, but the Defendant failed to provide an explanation to the Plaintiff. The Plaintiff's treating doctors provided medical records and other documents to the Defendant certifying that her absences were caused by her pregnancy related issues.

20. On June 1, 2021, the Plaintiff attempted to log on to the Defendant's system so she could start working but the credentials were not working. The Plaintiff contacted her supervisor and informed that person that her credentials were not working. The supervisor told the Plaintiff

12

that she would find out and get back to the Plaintiff.

21. Subsequently, the supervisor informed the Plaintiff that she was working on fixing the glitch that prevented her from logging into the system. Another supervisor contacted the Plaintiff indicating that she was up for termination because she had accumulated too many points in unexcused absences. The Plaintiff explained that she had been out due to her complications stemming from her pregnancy and again provided the documents showing such complications. The person told the Plaintiff to have the doctor send proof of her condition. The Plaintiff's doctor sent the necessary medical records and necessary proof of her condition to the Defendant.

22. The Plaintiff attempted to log into the system to start working again to no avail. Her supervisor led the Plaintiff to believe that it was just a matter of time until the glitch was resolved so she could log into the system again. She contacted various individuals in order to have the glitch resolved but people were not able to tell her why she could not log into the system.

23. On or about June 29, 2021, the Defendant terminated the Plaintiff because she had accumulated too many points. The point accumulated during her time off due to her pregnancy were counted toward that count.

24. On or about December 6, 2021, the Plaintiff timely submitted a charge of discrimination the Equal Employment Opportunity Commission ("EEOC"). In March of 2021, the Plaintiff's attorney contacted the EEOC about the charge, but the EEOC could not find it in its system. The Plaintiff's attorney again submitted the EEOC charge to the EEOC with proof that it had in fact been submitted on December 6, 2021. The EEOC responded indicating that they had received the charge and would correct their system internally to reflect that it was received by the EEOC on December 6th. To date, the EEOC has not provided rights to sue letter. Plaintiff's counsel has requested a rights to sue letter repeatedly to no avail.

25. The EEOC forwarded the charge to the Florida Commission on Human Relations (the

"FCHR") to investigate the claim. The FCHR failed to make a determination within 180 days.

## COUNT I
### (VIOLATION OF TITLE VII)

26. Plaintiff hereby incorporates by reference paragraphs 1 through 25 above as if fully set forth herein.

27. By its conduct in discriminating against Plaintiff on account of her pregnancy and pregnancy-related condition and treating her differently from other employees under similar circumstances, the Defendant intentionally violated Title VII, as amended by the Pregnancy Discrimination Act. The Defendant penalized the Plaintiff because she was pregnant to the point that the Defendant fired her.

28. As a result of such violations, Plaintiff is entitled to legal and equitable relief including, without limitation, reinstatement to her prior position with full compensation and benefits, back pay, interest, front pay, and compensatory damages.

29. Based on the Defendant's intentional and malicious conduct, Plaintiff is further entitled to an award of punitive damages.

30. Additionally, Plaintiff is entitled to recover her costs and reasonable attorneys' fees incurred in having to file and prosecute this action.

## COUNT TWO
### (VIOLATION OF THE ADA)

31. Plaintiff hereby incorporates by reference paragraphs one through 25 above as if fully set forth herein.

32. By its conduct as described above, Defendant violated the ADA by: (1) refusing to accommodate her qualified disabilities of experiencing a complication related to her pregnancy as well as her underlying condition of pregnancy; (2) discriminating against Plaintiff on account of her symptoms, her pregnancy and pregnancy-related condition; (3) refusing to provide what were

reasonable accommodations for her physical restrictions relating to her qualified conditions; and (4) retaliating against Plaintiff for her internal complaint regarding such discrimination and refusal to accommodate her pregnancy-related physical restrictions.

33. The Defendant's conduct was intentional and malicious.

34. As a result of such violations, Plaintiff is entitled to legal and equitable relief including, without limitation, reinstatement to her prior position with her full compensation and benefits, back pay, interest, front pay, and compensatory damages.

35. Based on the Defendant's intentional and malicious conduct, Plaintiff is further entitled to an award of punitive damages.

36. Additionally, Plaintiff is entitled to recover her costs and reasonable attorneys' fees incurred in having to file and prosecute this action.

## COUNT THREE
## (VIOLATION OF FMLA)

37. Plaintiff hereby incorporates by reference paragraphs 1 through 25 above as if fully set forth herein.

38. The Defendant employed more than 50 employees within 75 miles of the worksite. By its conduct as described above, Defendant violated the FMLA by: (1) denying Plaintiff leave under the Act; (2) harassing and discriminating against Plaintiff on account of her entitlement to such leave, her pregnancy, her pregnancy-related condition, and the resulting need to take FMLA leave as a qualified individual; (2) refusing to reinstate her to her prior position, or to a substantially equivalent position with equivalent compensation, benefits and status; and (3) retaliating against Plaintiff for her exercising her rights under the FMLA.

39. The Defendant's conduct was intentional and malicious. The Defendant is large company that employs thousands of employees throughout the country. The Defendant has continually received FMLA/maternity requests from employees at all levels of the company and has

approved many leave requests. The Defendant has also faced various lawsuits for interference and retaliation against individuals who exercised their rights under FMLA. The Defendant has extensive experience with personnel issues such as maternity leave requested by pregnant employees, and as a result, knows the FMLA statute and that its conduct in this case violated that statute. The Defendant showed reckless disregard in this case when it refused to excuse the absences and to add the negative points to the Plaintiff's employment record and eventually firing her. The Defendant willfully violated FMLA statute when it denied to excuse the Plaintiff's absences on in March of 2021 and April of 2021.

40. As a result of such violations, Plaintiff is entitled to legal and equitable relief including, without limitation, reinstatement to her prior position with her full compensation and benefits, back pay, interest, front pay, and compensatory damages.

41. Based on the Defendant's intentional and malicious conduct, Plaintiff is further entitled to an award of liquidated damages.

## COUNT THREE
### (VIOLATION OF FCRA-Fla. Stat. Sec. 760.01, et seq.)

42. Plaintiffs herein allege and incorporates by reference Paragraphs 1 – 25 of the Complaint as if fully set forth herein and further allege that:

43. The Defendants violated Florida's Civil Rights Act when it denied her requests for relief due to her pregnancy and pregnancy related complications and firing her for taking such leave.

44. The Plaintiff was discriminated against and was fired due to her pregnancy.

45. The Defendant failed and/or refused to provide a reasonable accommodation given that the Plaintiff had clear pregnancy related issued. The Defendant willfully violated the FCRA.

46. As a result of the Defendant's willful violation of the FCRA, the Plaintiff has been damaged. She is entitled to back pay, front pay, compensatory damages, liquidated damages and

punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, based on the foregoing, Plaintiff respectfully requests that this Court grant her the following relief:

    a. Judgment against Defendant;

    b. An award of compensatory damages, including mental pain and anguish, embarrassment;

    c. An award of punitive damages;

    d. Equitable relief including reinstatement, an award of back pay, front pay, lost benefits, and other appropriate relief;

    e. Injunctive relief;

    f. Liquidated damages;

    g. Reimbursement of her attorneys' fees and costs; and

    h. Such other and further relief as this Court deems just, equitable and proper.

## DEMAND FOR A JURY TRIAL

Plaintiffs demand a jury trial on any and all triable issues.

Respectfully submitted,

/s/Andres H. Lopez
Andres H. Lopez
Fla. Bar No. 0067564
The Andres Lopez Law Firm, PA
101 NE 3rd Avenue, Suite 1500
Ft. Lauderdale, FL  33301
Phone: 954-237-8138



17